**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ALEC F.,[1] | : | Case No. 3:20-cv-00467 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMSSIONER OF SOCIAL | : | |
| SECURTY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

**REPORT AND RECOMMENDATIONS[2]**

---

Plaintiff Alec F. brings this case challenging the Social Security Administration's denial of his application for a period of disability and Disability Insurance Benefits.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply (Doc. #15), and the administrative record (Doc. # 9).

## I.    Background

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on October 1, 2018, alleging disability due to several impairments, including ADHD (inattentive type), chronic lower back pain, chronic knee pain, hypermobile joints, mood problems (depression and anxiety), recurrent partial dislocation of kneecaps, shoulder pain, and ankle pain.  (Doc. #9, *PageID* #247).  After Plaintiff's application was denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Keith J. Kearney on October 31, 2019.  Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1420.  He reached the following main conclusions:

Step 1:      Plaintiff has not engaged in substantial gainful activity since May 5, 2015, the alleged disability onset date.

Step 2:      Plaintiff has the following severe impairments: depression, hypermobility syndrome, anxiety, left patellofemoral syndrome, obesity, and recurrent left patellar dislocation.

Step 3:      Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … limited to a static work environment tolerating few changes in a routine work setting and when said changes do occur, they would need to take place gradually and would occur infrequently. He is limited to occasional interaction with a small group of coworkers, where contact is casual in nature. He is limited to occasional superficial interaction with the public, by superficial I mean if a member of the public were to approach and ask directions to the nearest restroom, they would be able to provide such information, but that would be the extent of

the interaction. He is limited to simple, routine, and repetitive tasks. He requires a cane for ambulation."

He is unable to perform his past relevant work as a surveillance system monitor.

Step 5:      He could perform a significant number of jobs that exist in the national economy.[3]

(Doc. #9, *PageID* #s 61-73).  Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since May 5, 2015.  *Id.* at 74.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #9, *PageID* #s 62-72), Plaintiff's Statement of Errors (Doc. #10), and the Commissioner's Memorandum in Opposition (Doc. #14). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

---

[3] The ALJ relied on the vocational expert's testimony to find that Plaintiff would be able to perform the requirements of representative light, unskilled occupations such as an inspector, hand packager (100,000 jobs in the national economy), an assembler, hospital plastics (100,000 jobs in the national economy); and an assembler, electrical (200,000 jobs in the national economy).  (Doc. #9, *PageID* #73).

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. **Discussion**

Plaintiff purports to raise three issues in his Statement of Errors: (1) "the appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers.  As such, the decision in this case by an ALJ who derived his authority from Andrew Saul was Constitutionally defective[;]" (2) "the ALJ's decision should be reversed or remanded as the ALJ erred when he failed to properly evaluate the evidence in this matter and properly formulate his RFC[;]" and (3) "the ALJ's decision should be reversed or remanded at the ALJ's decision was based on improper and unsupported testimony from the vocational expert."  (Doc. #10, *PageID* #s 682-91).[4]    Having reviewed the arguments of the parties and the evidence of record, the

---

[4] Plaintiff's Statement of Errors is replete with a number of unclear and underdeveloped arguments that appear to allege additional errors than those set forth in the "issue" headings.  As such, the undersigned has addressed every argument reasonably set forth in Plaintiff's brief. With that being said, it is not the Court's function to comb through the entire record to develop an argument on Plaintiff's behalf or to take the portions of the record cited by Plaintiff's counsel and attempt to craft an argument that supports the general issues she referenced in the most perfunctory manner. *Gray v. Astr*ue, 4:09–CV–01468, 2010 WL 2106200 (N.D. Ohio Mar. 31, 2010) *report and recommendation adopted sub nom. Gray v. Comm'r of Soc. Sec*., 4:09CV1468, 2010 WL 2106196 (N.D. Ohio May 25, 2010) (citing

undersigned finds that Plaintiff's alleged errors are without merit and, therefore, recommends that the Commissioner's decision be affirmed.

### A. Constitutional Challenge

In his first statement of error, Plaintiff alleges that 42 U.S.C. § 902(a)(3), which limits the President's power to remove the Commissioner of the Social Security Administration ("SSA") without cause, violates the separation of powers doctrine, and thus, former-Commissioner Andrew Saul's delegation of power to the ALJ who adjudicated Plaintiff's claim was defective. (Doc. #10, *PageID* #s 682-83). As a result, Plaintiff contends that he is entitled to a de novo hearing before a new ALJ. *Id.*

At the outset, the undersigned notes that Plaintiff's claim is procedurally improper as it raises Constitutional claims that were not initially set forth in her Complaint. (*See* Doc. #1). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." While the complaint need not provide "detailed factual allegations," it does "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action [.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, at minimum, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 47, (1957)).

---

*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")). *See also Hollon v. Comm'r of Soc. Sec*., 447 F.3d 477, 490 (6th Cir. 2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal...."). Thus, to the extent that Plaintiff's additional arguments were only set forth in a perfunctory manner, such arguments are deemed waived.

In this case, Plaintiff bases her Constitutional challenge on, *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020), a United States Supreme Court case that was decided on June 20, 2020.  (Doc. #10, *PageID* #s 682-83).  Despite the intervening five months between the issuance of this case and the initiation of the current suit, Plaintiff failed to set forth any facts or law related to her Constitutional claim in her November 17, 2020 Complaint.  (*See* Doc. #1).  As a result, the undersigned finds that Plaintiff failed to provide fair notice to the Commissioner of this Constitutional claim, in violation of Federal Rule of Civil Procedure 8(a)(2), thus making her claim procedurally improper.  *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same).

Moreover, Plaintiff's Constitutional claim also fails on substantive grounds. In *Seila Law*, the case upon which Plaintiff bases his claim, the Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id*. at 2197.

Here, the parties agree that 42 U.S.C. § 902(a)(3), the statute that governs removal of the Commissioner of the SSA, contains a similar restriction on the President's removal authority, and is therefore, unconstitutional to the extent it limits the President's authority to remove the

Commissioner of the SSA without cause.  (Doc. #10, *PageID* #682; Doc. #14, *PageID* #715).  In turn, Plaintiff alleges that former-Commissioner Andrew Saul's appointment violated the principle of separation of powers, thereby depriving him of authority to carry out any functions of his office, including the delegation of authority to the ALJ who adjudicated Plaintiff's application. (Doc. #10, *PageID* #683).  As a result, Plaintiff claims that he is entitled to a *de novo* hearing before a new ALJ.  *Id*.  However, the Commissioner contends that the ALJ who determined the Plaintiff's claim on December 24, 2019, held office on that date as a result of a delegation of authority that occurred in July 2018 by former *Acting* Commissioner Nancy Berryhill. (Doc. #14, *PageID* #s 717-18).

As the Commissioner correctly notes, the removal provisions of § 902(a)(3) do not apply to an Acting Commissioner. *Id*. at 718. (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1781 (2021) ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain "plain language to take [that power] away.").  Thus, as a factual matter, the potential unconstitutionality of former-Commissioner Andrew Saul's appointment is of no consequence in Plaintiff's case as the ALJ who determined Plaintiff's claim did not derive his power from Mr. Saul. *Accord Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Commissioner Berryhill who, as Acting Commissioner, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, *3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by

7

an Acting Commissioner of Social Security who could be removed from the office at the President's discretion.")).

Moreover, even if the ALJ in this case had derived his authority from former-Commissioner Saul instead of former-Acting Commissioner Berryhill, the alleged unconstitutionality of § 902(a)(3) does not necessarily mean that former-Commissioner Saul lacked the ability to delegate the power to others to decide Plaintiff's claim. Indeed, under the doctrine of severability, "'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" *Seila Law*, 140 S.Ct. at 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Thus, even in the absence of a severability clause, when "'confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.'" *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 130 S.Ct. 3138, 3161 (2010)). For that very reason, the Supreme Court found in *Seila Law* that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even with the unconstitutional removal provision was stricken. 140 S.Ct. at 2209-10, 2245.

The same is true with regard to the SSA. If the removal provision in § 902(a)(3) is stricken, the SSA would still be capable of functioning independently. *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (rejecting the plaintiff's separation of powers claim, in part, because, even if § 902(a)(3) was unconstitutional, it was severable from the remainder of the statutes governing the SSA); *Shaun A. v. Comm'r of Soc. Sec.*,

Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (same).

Finally, even assuming that the removal provision in § 902(a)(3) is unconstitutional, it does mean that Plaintiff is entitled to a new hearing. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787; *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See id.* at 1788–89 (remanding for further proceedings to determine whether compensable harm to the plaintiff occurred due to the President's inability to remove a Director of the FHFA except for cause).

In this case, Plaintiff has made no showing of compensable harm. Instead, Plaintiff simply claims that "he sustained an injury from an executive act that allegedly exceeded the official's authority." (Doc. #15, *PageID* #754).[5] However, as recognized by Justice Kagan in *Collins*, the

---

[5] Plaintiff also alleges that he was harmed by former-Commissioner Saul's policy interpretation of how "musculoskeletal impairments are evaluated." (Doc. #15, *PageID* #755). In making this broad assertion, Plaintiff fails to set forth any specific details on the changes made in this interpretation and how they were applied in Plaintiff's claim. Accordingly, it is unclear exactly how Plaintiff believes he was harmed by this change. Thus, the undersigned finds that Plaintiff has not sufficiently alleged harm due to any alleged policy change implemented by SSA during this

President's choice of the SSA Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. Collins, 141 S.Ct. at 1802 (Kagan, J., concurring) ("The SSA has a single head with for-cause removal protection ... But ... I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

Based on the foregoing, Plaintiff's first statement of error is not well taken.[6] Accordingly, the undersigned does not reach the Commissioner's alternative arguments including harmless error, *de facto* officer, the rule of necessity, and other prudential considerations.

### B. Listing Impairments at Step Three

At Step Three of the sequential process, Plaintiff carries the burden to show that he has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If an applicant meets all of the criteria of a listed impairment, he is disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. §

---

time, either.

[6] Notably, this decision is in line with other District Courts in the Sixth Circuit, which have routinely rejected the Constitutional claim raised by Plaintiff and concluded that the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) does not require remand. *See Crawford v. Comm'r of Soc. Sec.*, No. 2:21-CV-726, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021) (Vascura, M.J.); *Bowers v. Comm'r of Soc. Sec.*, No. 2:20-CV-6024, 2022 WL 34401, at *8 (S.D. Ohio Jan. 4, 2022) (Preston Deavers, M.J.); *Miley v. Comm'r of Soc. Sec.*, No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi*., No. 20-518-HRW, 2021 WL 6052423 (E.D. Ky. Dec. 21, 2021). Courts from other Circuits have held similarly. *See, e.g.*, *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned agrees with the reasoning set forth in these other cases and reaches the same result.

404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers*, 582 F.3d at 653 ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether an applicant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* (citations omitted).

However, the ALJ "need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raise[s] a substantial question as to whether [the applicant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* at 641 (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any Step Three evaluation of the applicant's physical impairments, when the ALJ found that the applicant had the severe impairment of back pain).

Here, an applicant "must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x at 641-42). "Rather, the [applicant] must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by

failing to evaluate a listing at Step Three." *Id.* at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error when a claimant could not show that he could reasonably meet or equal a Listing's criteria).

In this case, Plaintiff alleges that the ALJ erred in finding that Plaintiff did not satisfy the criteria of Listings 1.02, 12.04, 12.06 and 14.06. Each of these Listings will be discussed in turn.

1. *Listing 1.02*

Plaintiff argues that the ALJ committed reversible error in failing to find him disabled under Social Security Listing 1.02, which provides in pertinent part:

> 1.02. *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]
> >
> > or
> >
> > B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 (2019). An "inability to ambulate effectively" means "an extreme limitation of the ability to walk." *Id.*, § 1.00B2b(1). Ineffective ambulation is generally defined "as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities." *Id.* A person ambulates effectively if they are "capable of sustaining a reasonable

walking pace over a sufficient distance to be able to carry out activities of daily living . . . [and can] travel without companion assistance to and from a place of employment." *Id*, § 1.00B2b(2). Examples of ineffective ambulation include requiring a walker, tow crutches or two canes, and the inability to walk a block at a reasonable pace on rough or uneven surfaces. *Id*. Ultimately, the Plaintiff bears the burden of establishing that he was disabled under Listing 1.02. *See Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009).

Plaintiff has not met his burden of proving that his impairments meet or medically equal a listed impairment. For the purposes of Listing 1.02A, Plaintiff has not established an inability to ambulate effectively as defined in § 1.00B2b. Indeed, as noted by the ALJ, while Plaintiff testified that he uses a cane, there was no medical evidence demonstrating that it was medically necessary. (Doc. #9, *PageID* #62). Instead, the record indicates that Plaintiff purchased the cane online and simply asked for assistance in learning how to properly use the cane. *Id*. Additionally, there were several documented examples of Plaintiff's healthcare providers noting that he ambulated without problem. *Id*. Moreover, the use of a single cane is simply insufficient to satisfy the Listing criteria, which requires him to show that his use of a hand-held assistive device "limits the functioning of *both* upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1) (2019) (emphasis added); *see also Holbert v. Comm'r of Soc. Sec.*, No. 2:10-cv-5553, 2021 WL 282554, *12 (S.D. Ohio Jan. 28, 2021) (Preston Deavers, M.J.). Finally, the only doctors who considered this Listing found that his impairments did not meet or medically equal Listing 1.02. (Doc. # 9, *PageID* #s 121, 137). Accordingly, the ALJ's conclusion that Plaintiff does not meet or equal Listing 1.02 is supported by substantial evidence.

13

### 2. *Listings 12.04 and 12.06*

Plaintiff next argues that the ALJ erred when he found that Plaintiff's depression did not meet Listing 12.04 and that his anxiety did not meet Listing 12.06. Specifically, Plaintiff alleges that the ALJ erred in his analysis of the Listings' "paragraph B" functional limitations analysis.[7] (Doc. #10, *PageID* #s 686-88). In response, the Commissioner contends that the ALJ relied on substantial, objective medical evidence in finding that Plaintiff did not meet the paragraph B criteria for either Listing. (*See* Doc. #14, *PageID* #s 732-33).

Listing § 12.04 establishes the criteria for depressive, bipolar, and related disorders while Listing § 12.06 establishes the criteria for anxiety and obsessive-compulsive disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A), 12.04, 12.06. To meet the Listings' severity level for these categories of disorders, an applicant must show that he meets: (1) the impairment-specific medical criteria in paragraph A; and (2) the functional limitations criteria in paragraph B or C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

In evaluating mental impairments, the ALJ must rate the degree of functional limitation associated with an applicant's medically determinable mental impairments. 20 C.F.R. § 404.1520a(c). The ALJ is to rate limitations in four broad functional areas. *Id.* at § 404.1520a(c)(3). Effective January 17, 2017, the paragraph B criteria for Listings 12.04 and 12.06 include the following four functional areas:

> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).

---

[7] The paragraph B criteria for each listing are identical. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B).

4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B). In rating limitations, ALJs are to use the following five-point scale: none, mild, moderate, marked, and extreme, with the latter being "incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F.  To satisfy Listing 12.04 or 12.06, the ALJ must find "[e]xtreme limitation of one[] or marked limitation of two" of these broad functional areas. *Id.* at §§ 12.04(B), 12.06(B).

In this case, the ALJ determined that the severity of Plaintiff's mental impairments do not satisfy the paragraph B criteria for these Listings as he only had a "moderate" limitation in each of the four functional areas.  (Doc. #9, *PageID* #s 62-63).  In response, Plaintiff challenges the ALJ's findings with regard to the latter three functional areas, arguing that the record shows that Plaintiff was "seriously limited" in his ability to interact with others; concentrate, persist, or maintain pace, and adapt or manage oneself. (Doc. #10, *PageID* #s 687-88).

An applicant has a "seriously limited" or "marked" limitation when "several activities or functions are impaired or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the applicant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652-53 (6th Cir. 2009). This stands in contrast to the definition of a "moderate" limitation, which refers to an

15

applicant that has "a fair ability to function independently, appropriately, effectively, and on a sustained basis in an area." *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00F.2.c.

In considering Plaintiff's limitations in interacting with others, the ALJ acknowledged that he reported having trouble getting along with his girlfriend and her parents but that he kept busy by running errands for the household and for his girlfriend's extended family. (Doc. #9, *PageID* #62). The ALJ also noted that Ms. Onysukwu documented Plaintiff as having logical and organized thoughts with possible paranoid thoughts at his mental examination. *Id*.

In finding that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, the ALJ documented the Plaintiff's childhood diagnosis of ADHD that went without intervention due to his father's opposition. *Id*. He also acknowledged the Plaintiff's complaints of anxiety and significant difficulty in sustaining energy and effort for work-related tasks. *Id*. However, in finding that Plaintiff's limitation in this area was not as severe as he alleged, the ALJ pointed out that Plaintiff performed well on the cognitive examination, evidenced by immediately recalling all 3 out of 3 objects verbally and another 3 out of 3 objects after a 5-minute delay. *Id*. Plaintiff also "perform[ed] serial 3s through 6 trials and serial 7s through 6 trials with one error. He could perform digits forwards and backwards for 5 digits each." *Id*.

Finally, with regard to Plaintiff's ability to adapt and manage himself, the ALJ also found that the record supported only a moderate limitation. *Id*. at 63. Here, the ALJ detailed Plaintiff's daily routine and the additional tasks he was able to perform:

> On a typical day, [Plaintiff] woke up at 11 a.m. and took 15 minutes to get up. He watched television most of the day. He went shopping with his girlfriend and went to bed between midnight and 2 a.m. He stated that he had an emotional therapy dog

that he walked twice a day. His girlfriend and her parents helped care for the dog. He said that he needed daily reminders to shower. He prepared meals once a week and it took him 20 minutes. He did small loads of dishes at a time. [Plaintiff] said that he only drove once a month and his girlfriend drove the rest of the time. He went to the grocery store once every two weeks. He took his dog to the dog park once a week.

*Id.* (internal citations to record omitted).

In alleging that the ALJ erred in his assessment of this criteria, Plaintiff fails to explain how the evidence supports more severe limitations in each of these disputed functional areas or point to evidence otherwise ignored by the ALJ. Instead, Plaintiff simply provides generic summaries of his hearing testimony and the psychological evaluations by Janis Woodworth, Ph.D., and Virginia Collings, M.D., that he believes the ALJ did not properly consider. *Id.* at 686-87. Again, at Step 3 of the analysis, it is Plaintiff's burden to prove that he meets all of the criteria for the relevant Listing. *See Foster*, 279 F.3d at 354.

Notably, the ALJ considered each of these pieces of evidence in his decision, leading the undersigned to believe that Plaintiff is asking the Court to reweigh such evidence in order to come to a different conclusion than that reached by the ALJ, which is not in its province to do. *See Reynolds,* 424 F. App'x at 414 (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")).

Additionally, even the medical consultants who considered these Listings determined that Plaintiff did not meet the criteria. (Doc. #9, *PageID* #s 121, 137). In short, the ALJ has already considered the evidence of record and made detailed findings as to each functional limitation, and

17

the Court finds that substantial evidence supports that decision. The Court therefore finds that the ALJ appropriately found that the criteria of paragraph B of Listing 12.04 and 12.06 are not satisfied.

### 3. Listing 14.06

Plaintiff also argues that the ALJ erred by not considering Listing 14.06(A)[8], which pertains to undifferentiated and mixed connective tissue disease. (Doc. #10 at *PageID* # 686-87). In order to satisfy the criteria for Listing 14.06(A), Plaintiff must demonstrate the following:

> A.    Involvement of two or more organs/body systems, with:
>> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. Part 404, Subpt. P, App. 1, §14.06(A).

Again, "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 432 (6th Cir. 2014)(quoting *Sheeks*., 544 Fed. App'x at 641). However, an ALJ must consider and discuss a relevant listing when the record raises 'a substantial question as to whether [the applicant] could qualify as disabled' under a listing." *Id*. (quoting *Abbott,* 905 F.2d at 925). In order to raise a "substantial question," an applicant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id*. Without

---

[8]In alleging that he satisfies the requirements for Listing 14.06, Plaintiff only sets forth the criteria of 14.06(A). Therefore, the Court finds that any alternative argument that Plaintiff meets the criteria of 14.06(B) to be waived.

this specific evidence, an ALJ does not "commit reversible error by failing to evaluate a listing at Step Three." *Smith-Johnson*, 579 Fed. App'x at 433.

The undersigned finds that Plaintiff has not shown that the record raises a substantial question as to whether he meets or medically equals the requirements of Listing 14.06(A). Thus, the ALJ's failure to discuss the Listing was not reversible error. Like many of his arguments, Plaintiff does not point to any specific evidence demonstrating he could meet or equal every requirement of this Listing. Rather, Plaintiff generically refers to his diagnosis of hypermobility syndrome and score of 7 on the Beighton scale as evidence that the ALJ should have considered this Listing. (Doc. #10, *PageID* #s 685-86). Plaintiff vaguely notes, without citing any evidence in the record, that he "had involvement of both musculoskeletal and psychological systems with the musculoskeletal system (knees) being of at least moderate severity." *Id.* Plaintiff also points to his testimony that "he took a two to four hour nap every day" as evidence that he had "fatigue and malaise." *Id.*

In reviewing the specific requirements of Listing 14.06, it is noted the ALJ found there to be sufficient evidence to support a finding that Plaintiff's alleged hypermobility syndrome, a connective tissue disease, to constitute a severe impairment. (Doc. #9, *PageID* #61). A mere diagnosis of a connective tissue disease, however, is not the only criteria of this Listing. Here, Plaintiff has not pointed to any medical evidence confirming that his hypermobility syndrome involves two or more body systems with one such system at a moderate level of severity. Notably, while there is a documented history of Plaintiff's complaints of back and knee pain, the ALJ also noted the concerns about the alleged severity of these symptoms, including reports that Plaintiff's

19

gait was nonantalgic on examination, he demonstrated 5/5 strength in his extremities, he was denied a disability placard and instructed to get daily aerobic exercise, and that his pain ratings were inconsistent with his nonverbal pain behavior. *Id.* at 65-72.[9]

Additionally, Plaintiff's testimony that he takes a nap for two to four hours every day is insufficient to satisfy the Listing's requirement that he presents with the two separate constitutional symptoms of "severe fatigue" and "malaise." Under the regulations, "severe fatigue" is defined as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404. Subpt. P. App.1, § 14.00C2. In contrast, "malaise" is defined as "frequent feelings of illness, bodily discomfort, or lack of well-being that results in significant reduced physical or mental function." *Id.* Here, Plaintiff has failed to cite to any clinical finding of severe fatigue or malaise or provide a medical opinion that explains how his daily naps could meet the Listing criteria. On the contrary, a review of Plaintiff's medical records reveal that he denied fatigue, was negative for those symptoms, or only stated that he was "a little tired." (Doc. #9, *PageID* #s 418, 630, 638, 666).

In sum, as Plaintiff has not provided any evidentiary support demonstrating he could reasonably meet or equal Listing 14.06, he has not shown the record raises a "substantial question" as to whether the requirements of the listing may be met. Without this specific evidence, an ALJ

---

[9] In this case, Plaintiff acknowledges that the ALJ doubted the severity of his reported pain. Plaintiff uses this to allege that "the ALJ failed to consider whether Plaintiff's Joint Hypermobility Syndrome could have been the reason for the inconsistent pain symptoms. (Doc. #10, *PageID* #686). While Dr. Hong did administer the Beighton test and diagnosed Plaintiff with joint hypermobility syndrome, he did not opine that this syndrome was the cause of the inconsistent pain ratings documented by Mr. Linkinogger. Thus, it is unclear upon what basis Plaintiff expected the ALJ to make this connection.

does not "commit reversible error by failing to evaluate a listing at Step Three." *Smith-Johnson*, 579 Fed. App'x at 433.

### C.  Medical Opinions

Next, Plaintiff takes issue with the ALJ's assessment of the medical opinions of Janis Woodworth, Ph.D., and Virginia Collings, M.D, arguing that the "ALJ failed to articulate how he considered the supportability and consistency of these reports."  (Doc. #10, *PageID* #s 690-91). Plaintiff also alleges error in the ALJ's reliance on the reviewing examiners' opinions, despite the fact that they did not review all of the evidence of record, such as Dr. Hong's report on Plaintiff's hypermobility syndrome. *Id*. at 691.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 404.1527.  Because Plaintiff's claim for disability was filed in 2018, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard for applications filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  Under the new regulations, the ALJ "will not defer or give any

21

specific evidentiary weight, including controlling weight, to any medical opinion(s) ….” 20 C.F.R. § 416.920c(a).  Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor “that tend[s] to support or contradict a medical opinion or prior administrative medical finding.” § 404.1520c(c).  Further, because the regulations consider supportability and consistency the “most important factors,” ALJs are obligated to “explain how [they] considered the supportability and consistency factors for a medical source’s medical opinions,” while they “may, but are not required to, explain how [they] considered” the remaining factors.  § 404.1520c(b)(2).

Plaintiff underwent a psychological consultative examination with Dr. Woodworth in January 2018. (Doc. #9, *PageID*. #s 320-26).  Upon completion of the examination, Dr. Woodworth made a number of findings with respect to Plaintiff’s work-related mental abilities. *Id*. at 325-26.  Specifically, Dr. Woodworth opined that Plaintiff would have no more difficulties than same-age peers in understanding, remembering, and carrying out instructions. *Id*. at 325. Similarly, she found that Plaintiff did not demonstrate any difficulty with maintaining attention and concentration and, therefore, should have no more difficulty than same-age peers in maintaining attention and concentration for simple tasks and multi-step tasks.  *Id*. at 326.  In light of Plaintiff’s reported lack of difficulty getting along with coworkers and supervisors in past work experiences, Dr. Woodworth also found that he would have no more difficulty than same-age peers in responding appropriately to supervision and to coworkers in a work setting.  *Id*. Finally, Dr. Woodworth found that Plaintiff’s reported symptom of worsening anxiety when he is in social

22

situation might cause him to have more difficulty in responding appropriately to work pressures in a work setting. *Id.*

In reviewing Dr. Woodworth's opinion, the ALJ concluded it was "not persuasive because the evidence showed greater psychological limitations[.]" *Id.* at 70. To support his finding, the ALJ cited to numerous instances in the record, including from Dr. Woodworth's opinion where the Plaintiff demonstrated more severe limitations than that opined by Dr. Woodworth. In other words, while he did not expressly reference the words "supportability" and "consistency," the ALJ discredited Dr. Woodworth's opinions because they were not supported by her own findings or consistent with the other evidence of record. Moreover, to the extent that the ALJ erred in providing this review, such error is harmless as he ultimately adopted greater limitations than that advocated by Dr. Woodworth. *See Malone v. Comm'r of Soc. Sec.*, No. 1:16-cv-1084, 2017 WL 9485649, at \*14 (N.D. Ohio May 4, 2017) ("Because the ALJ found that plaintiff's RFC was more restricted than had the state-agency reviewing physicians, his assignment of no weight to their opinions was harmless."), *adopted by* 2017 WL 2821449 (N.D. Ohio June 30, 2017). Indeed, in formulating Plaintiff's RFC, the ALJ included the following mental restrictions:

> [Plaintiff is] limited to a static work environment tolerating few changes in a routine work setting and when said changes do occur, they would need to take place gradually and would occur infrequently. He is limited to occasional interaction with a small group of coworkers, where contact is casual in nature. He is limited to occasional superficial interaction with the public, by superficial I mean if a member of the public were to approach and ask directions to the nearest restroom, they would be able to provide such information, but that would be the extent of the interaction. He is limited to simple, routine, and repetitive tasks.

(Doc. #9, *PageID* #63).

23

In short, the ALJ's assessment of Dr. Woodworth's opinion is supported by substantial evidence. To the extent that Plaintiff alleges procedural deficiencies in the ALJ's review, such error is harmless as Plaintiff has failed to point to any limitations advocated by Dr. Woodworth that the ALJ did not incorporate into his RFC.

Plaintiff's alleged error with the ALJ's review of Dr. Collings' opinion is similarly without merit. Dr. Collings conducted a psychological examination of Plaintiff in August 2018. (Doc. #9, *PageID* #s 329-333). After evaluating Plaintiff, Dr. Collings concluded that he had mobility limitations that necessitated a sedentary or adapted environment. *Id*. at 333. She also opined that his "pain and psychological factors affect energy and stamina, and he is unable at this time to consistently perform work activities but requires rest or shorter work periods." Id. Dr. Collings noted Plaintiff's discomfort with social interaction and stated that this may cause him to not respond appropriately to others. *Id*. She also found that he "functions best with task-oriented work and minimal personal interaction" and that "[d]epending on the tasks and environment, [Plaintiff] may have difficulty maintaining focus and concentration, and [therefore] needs to develop additional tools to facilitate this." *Id*. According to Dr. Collings, Plaintiff "is very capable intellectually but he will not be a candidate for competitive employment until he achieves management of his pain and depression." *Id*. She suggested that Plaintiff participate in regular, weekly, intensive psychotherapy and should focus on specific goal-setting and accomplishment instead of discussing issues and intellectualizing. *Id*.

In reviewing Dr. Collings' opinion, the ALJ concluded that it was "not persuasive because it was not consistent with the psychological evidence in the record." *Id*. at 71. He then proceeded

to cite to reports from Dr. Woodworth's examination that were not consistent with Dr. Collings' opinion, including appropriate speech and receptive language skills, and fair behavior skills. *Id.* The ALJ also pointed out that Dr. Collings' opinion was not consistent with Plaintiff's therapist's statements that he no longer required therapy and was unable "to articulate anything that he wanted to change in his life, but that his primary concern was qualifying for disability benefits." *Id.* Accordingly, the ALJ adequately considered the consistency of Dr. Collings' opinion with the evidence of record and found it unpersuasive. Further, despite not expressly using the term "supportability," the ALJ provided a thorough review of the evidence relied on by Dr. Collings and ultimately concluded that it was not persuasive. *Id.* at 67, 70-71. In short, the ALJ's decision as a whole is sufficient to permit this Court's review of the ALJ's evaluation of supportability and consistency. Thus, "[t]he ALJ's decision substantially complied with the requirements of § 404.1520c, and [his] failure to specifically use the terms "supportability" and "consistency" in [his] analysis, even if error, was harmless. *Hardy v. Comm'r of Soc. Sec.,* No. 2:20-CV-4097, 2021 WL 4059310, at *4 (S.D. Ohio Sept. 7, 2021) (Graham, D.J.).

Finally, Plaintiff also alleges error with the ALJ's assessment of the reviewing examiners' opinions as they did not have the opportunity to review the more recent medical evidence, including Dr. Hong's report regarding Plaintiff's hypermobility syndrome. (Doc. #10, PageID #691). Plaintiff's argument is not well-taken.

While it is true that Dr. Hong's report was submitted after the state agency physicians, Dr. Siddiqui and Dr. Green, reviewed the record, there is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case

record." *Helm v. Comm'r of Soc. Sec*., 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p). Here, despite the state agency physicians' not having access to the entire medical record, the ALJ still discussed and analyzed the more recent evidence, including Dr. Hong's report. In fact, in reviewing Dr. Hong's report, the ALJ found that his diagnosis of hypermobility syndrome to represent a severe impairment for Plaintiff that "significantly limit[s] [his] ability to perform basic work activities[.]" (Doc. #9, *PageID* #61). Additionally, the ALJ ultimately adopted an RFC that limited him to light work and required a cane for ambulation, which was more restrictive than that opined by Drs. Siddiqui and Green. (Doc. #9, *PageID* #s 63, 123-24, 139-40).

Further, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff who "bears the burden of proving the existence and severity of limitations caused by [his] impairments" through step four of the sequential evaluation process. *Jones,* 336 F.3d at 474. Accordingly, it is Plaintiff's burden to prove that he has a more restrictive RFC than that assessed by the ALJ. *See Jordan v. Comm'r of Soc. Sec*., 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 392 (6th Cir. 1999)). Plaintiff, however, does not indicate through citations to the record evidence or through factual or legal analysis what functional limitations caused by his hypermobility syndrome is not already accounted for in the RFC. This is especially significant in light of the fact that Dr. Hong's report itself did not contain any work-related restrictions, thus making it unclear what additional limitations Plaintiff believes this diagnosis warranted.

Accordingly, the ALJ's failure to impose more restrictive limitations to account for his hypermobility syndrome is not unreasonable. *See Kocher v. Comm'r of Soc. Sec*., No. 2:14-cv-

2263, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015) (Kemp, M.J.), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (Smith, D.J.) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005)) ("[W]hen 'there is no evidence in the record, of any functional limitations as a result of [an impairment] that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Townsend v. Astrue*, No. 6:12-CV-00261-SI, 2013 WL 687042, at *5 (D. Or. Feb. 25, 2013) (failure to discuss a diagnosis is error, but harmless where record does not reveal any limitations due to the diagnosed condition).

Thus, the ALJ properly considered how the additional evidence impacted the Plaintiff's condition and incorporated that information into his decision. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment ... and took into account any relevant changes in [plaintiff's] condition."). For all the foregoing reasons, Plaintiff's assignments of error relating to the ALJ's assessment of the medical opinions is without merit.

### D. The ALJ's Reliance on the Vocational Expert Testimony

In his final assignment of error, Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony because it was inconsistent with the Dictionary of Occupational Titles ("DOT"), and that the ALJ failed to resolve the conflict. (Doc. #10, *PageID* #s 691-93). Specifically, Plaintiff alleges that the "light work" jobs identified by the vocational expert are

inconsistent with the limitation contained in the RFC that required Plaintiff to use a cane for ambulation as two of the jobs identified require "significant handling." *Id*. According to Plaintiff, by not addressing this conflict, the ALJ failed to carry his burden at Step Five of the sequential process. Additionally, Plaintiff also contends that this claim should be remanded because the "inspector, hand packager" position cited by the vocational expert "does not exist." *Id*. at 692.

Social Security Ruling 00-4p provides that "before relying on [vocational] evidence to support a disability determination[,] the ALJ "must...identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a [vocational expert] and information in the [DOT]" and also must "[e]xplain in the determination or decision how any conflict that has been identified was resolved." Soc. Sec. R. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). In cases "[w]here no actual conflict is identified, however, courts have consistently held that an ALJ's failure to comply with [Soc. Sec. R.] 00–4p's inquiry requirement is harmless error." *Prince v. Astrue*, No. 2:10-CV-00008, 2011 WL 1124989, at *9 (S.D. Ohio Jan. 11, 2011) (Preston, M.J.), *report and recommendation adopted*, No. 2:10-CV-00008, 2011 WL 1124986 (S.D. Ohio Mar. 25, 2011) (Marbley, D.J.).

In this case, remand is not warranted as the ALJ satisfied the inquiry requirement and there is no actual conflict between the vocational expert's testimony and the DOT. At the hearing, the ALJ asked the vocational expert whether a hypothetical individual with Plaintiff's characteristics and RFC limitations could perform his past relevant work or other jobs in the national economy. (Doc. #9, *PageID* #s 104-06). The vocational expert responded that such and individual could not perform Plaintiff's past work "per the Dictionary of Occupational Titles and as performed" but

28

there were a significant number of jobs in the national economy that the individual could perform, including, inspector and hand packager; assembler, plastic hospital; and assembler, electrical accessories. *Id*. at 105-06.  The ALJ then asked whether an individual with Plaintiff's hypothetical limitations could perform these jobs if he also required a cane for ambulation.  *Id*. at 106.  In response, the vocational expert indicated that such an individual could perform each of the jobs he identified, even if he used a cane to ambulate, and clarified that this opinion was based on his "experience having done job analysis and labor market surveys" as the DOT "does not address the use of cane for ambulating."  *Id*.

In short, the vocational expert testified that Plaintiff could perform significant jobs in the national economy consistent with the ALJ's formulated RFC and appropriately clarified any departures from the DOT.  Although the vocational expert testified that the DOT "does not address the use of a cane for ambulating[,]" he appropriately relied on his professional education, experience, and labor market surveys to make his finding that an individual with Plaintiff's RFC could perform the identified jobs.  *See Skaggs v. Berryhill*, 2018 WL 4558203, *7 (W.D. Ky. Sept. 21, 2018) (holding that although the vocational expert's testimony departed from information in the DOT, the vocational expert's testimony was appropriate based "on his professional education, training, [and] experience"); *see also Monateri v. Comm'r of Soc. Sec.*, 436 Fed. Appx. 434, 446 (6th Cir. 2011) ("neither the Commissioner nor the [vocational expert] has an obligation to employ the DOT.").  Thus, to the extent that Plaintiff claims that the ALJ erred in not conducting a proper inquiry of the vocational expert's testimony, his argument is not well taken.

Indeed, in reviewing Plaintiff's argument, it appears that Plaintiff's issue is not with the vocational expert's testimony, but with the ALJ's RFC itself.  Afterall, it is the ALJ's formulated RFC that sets forth Plaintiff's ability to perform both a reduced range of light work along with the additional restriction that he needs a cane to ambulate while doing so. (Doc. #9, *PageID* #63). However, as other courts have recognized, while there may exist an apparent inconsistency between light work and the use of a cane, such does not preclude a finding that such and RFC is nevertheless supported by substantial evidence where the issue is expressly examined. *See, e.g., Bates v. Comm'r of Soc. Sec.*, 2016 WL 4607566 at *3 (W.D. Mich., Sept. 6, 2016); *Cotton v. Comm'r of Soc. Sec.*, 2016 WL 80667 at *4 (W.D. Mich., Jan. 7, 2016).

In this case, the vocational expert identified a significant number of jobs that an individual with Plaintiff's reduced range of light work could perform.  The ALJ then specifically asked the vocational expert whether the use of a cane to ambulate would reduce this number of jobs, and he testified that, based on his experience of job analysis and labor market studies, it would not. Thus, the ALJ clearly addressed this alleged discrepancy. *See Grillot v. Astrue*, No. 3:08-CV-111, 2009 WL 87577, at *8 (S.D. Ohio Jan. 12, 2009) (Merz, M.J.) ("Plaintiff's argument that his need to use a cane is inconsistent with the ability to perform a limited range of light work is not persuasive. Even assuming that Plaintiff requires the use of a cane, the [vocational expert] testified at the first administrative hearing that the use of an ambulatory aid would not have an affect on the number of jobs available to individual with Plaintiff's limitations"). As Plaintiff has not identified any other shortcoming in the ALJ's formulated RFC, this argument also lacks merit.

Finally, the Plaintiff's contention that this claim should be remanded because the vocational expert cited to a code for an "inspector, hand packager" that does not exist in the DOT is not well taken.  As the Commissioner correctly notes, the DOT number for an "inspector, hand packager" is found under DOT No. 559.687-074, and not 559.687-014 as testified by the vocational expert.  In other words, the position cited by the vocational expert does exist, he simply misstated the corresponding DOT number. Thus, any error here was harmless. *Swiney v. Colvin*, No. 2:15-CV-224, 2016 WL 4290597, at *1 (E.D. Tenn. Aug. 15, 2016) ("Therefore, although the [vocational expert's] testimony had minor discrepancies related to the DOT number, the substance of the [vocational expert's] testimony was reliable and sufficient for the ALJ to rely upon.").

For all the foregoing reasons, the undersigned overrules each of Plaintiff's statement of errors and finds the ALJ's decision to be supported by substantial evidence.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be affirmed; and

2.      The case be terminated on the Court's docket.

January 31, 2022                                 *s/Peter B. Silvain, Jr.*
                                                 Peter B. Silvain, Jr.
                                                 United States Magistrate Judge

31

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).

32